Robert S. **SPRINGSTON**, Plaintiff–
Appellant/Cross–Appellee,

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant–Appellee/Cross–Appellant,

**General Motors Corporation,**
Defendant–Appellee.

Nos. 96–3571, 96–3608.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1997.

Decided Nov. 19, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 22, 1998.*

---

\* Judge Clay recused himself from participation in this ruling.

Dennis R. Lansdowne (argued and briefed), Spangenberg, Shibley & Liber, Cleveland, OH, Justin F. Madden, John D. Liber (briefed), Spangenberg, Shibley & Liber, Cleveland, OH, Patricia A. Walker, Ralph E. Jocke (briefed), Walker & Jocke, Medina, OH, for Appellant.

Philip E. Howes (argued and briefed), Vogelgesang, Howes, Lindamood & Brunn, Canton, OH, Thomas J. Sweeney (argued and briefed), Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Thomas R. Himmelspach (briefed) Vogelgesang, Howes, Lindamood & Brunn, Canton, OH, Robert B. Duaane (briefed), Canton, OH, Joseph M. Ramirez (briefed), Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for Appellees.

David M. Heilbron (briefed), McCutchen, Doyle, Brown & Enersen, San Francisco, CA, Jeffrey Robert White (briefed), Washington, DC, Allen Schulman, Jr. (briefed), Allen Schulman & Associates, Canton, OH, for Amici Curiae.

Before: MARTIN, Chief Judge; RYAN and BATCHELDER, Circuit Judges.

## OPINION

BATCHELDER, Circuit Judge.

Plaintiff appeals and defendant Consolidated Rail Corporation ("Conrail") cross-appeals the judgment of the district court in this diversity action arising out of a collision between a Conrail train and a pick-up truck driven by plaintiff in northwest Ohio. For the reasons to follow, we AFFIRM the judgment of the district court.

### I

On June 1, 1991, at approximately 11:30 p.m., while traveling east on Route 281 in rural northwest Ohio, Robert Springston drove his pick-up truck onto a Conrail main track, directly in the path of a northbound Conrail train. The resulting collision left Springston a quadriplegic.

The crossing at which this collision occurred was equipped with a crossbuck and an advance warning sign as required by law; it did not have lights or mechanical crossing gates. Springston had never traversed this crossing before and was not familiar with the area. Conrail's engineer testified that Springston had his dome light on and appeared to be looking at the seat or the floor next to him when he drove over the tracks. Springston does not deny this allegation and in fact indicates that he had been looking at a map on the seat next to him sometime prior to the collision.

Springston brought suit against Conrail, which owns the train and the track, and General Motors Corporation ("GM"), which manufactured the train. The district court granted summary judgment to the defendants on plaintiff's claims of negligence based upon the lack of visual devices on the locomotive such as reflective tape, a strobe light, a ditch light, oscillating lights, and the color of the locomotive, finding that these claims were preempted by federal law. Subsequently, the court granted summary judgment to Conrail on plaintiff's punitive damages claim as well. The sole remaining

claim, a claim against Conrail for negligence based on the adequacy of the warning devices installed at the crossing, went to trial, and the jury apportioned negligence 30% to Conrail and 70% to Springston. Springston appeals, asserting that the district court erred in granting summary judgment to GM, in granting partial summary judgment to Conrail, in the instructions to the jury, and in its evidentiary rulings. Defendant Conrail appeals a single evidentiary ruling.

## II

### A. FEDERAL PREEMPTION

The district court granted summary judgment to both defendants on plaintiff's claims of negligence based on the lack of extra-statutory warning signals on the train, holding that these claims were preempted by federal law. We review *de novo* the court's granting of summary judgment. *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir.1995).

■ Federal preemption of state law claims can be either express or implied. The district court inferred preemption under the Boiler Inspection Act ("BIA").

> '[T]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.'

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Where Congress intends to occupy a field, state law in that field is preempted. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n*, 461 U.S. 190, 212–213, 103 S.Ct. 1713, 1726–27, 75 L.Ed.2d 752 (1983).

■ When facing a question of implied preemption, a court must begin with the presumption that the state law is valid. " 'It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed.' " *New York State Dept. of Soc. Servs. v. Dublino*, 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973) (citation omitted).

■ Plaintiff claims that GM was negligent in its design and manufacture of the train in question because it was not equipped with certain warning devices above and beyond those devices required by federal law, and that Conrail was negligent because it operated the train in that defective condition. Defendants counter by arguing that state law tort claims based upon the need for such extra-statutory devices are preempted by federal law. The defendants have the better argument. In 1893, Congress enacted the first of multiple statutes collectively known as the Safety Appliance Acts ("SAA"). *Baltimore and O.R.R. v. Jackson*, 353 U.S. 325, 338, 77 S.Ct. 842, 849–50, 1 L.Ed.2d 862 (1957) (Burton, J., dissenting). A related act, the BIA, was first enacted in 1911. *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1152 (9th Cir.1983). Through these acts, Congress conferred on the Interstate Commerce Commission ("ICC") full authority over "the entire locomotive and tender and all parts and appurtenances thereof." *Napier v. Atlantic Coast Line R.R.*, 272 U.S. 605, 608, 47 S.Ct. 207, 208, 71 L.Ed. 432 (1926) (quoting BIA amendment of 1915). That power was transferred from the ICC to the Department of Transportation in 1966 by the Department of Transportation Act. *Marshall*, 720 F.2d at 1152.

At the time plaintiff filed his complaint, these acts were codified within 45 U.S.C. §§ 1–43. As of July 5, 1994, Congress repealed 45 U.S.C. §§ 1–43. Pub.L. No. 103–272, § 7(b), 108 Stat. 1379. The Acts' provisions were transferred and re-codified at 49 U.S.C. §§ 20301–20306 and 20701–20903. Pub.L. No. 103–272, § 1(e), 108 Stat. 881–883

and 885–887. *See Moses v. Union Pacific R.R.*, 64 F.3d 413, 418 (8th Cir.1995).

In *Napier,* the Court considered whether Congress had intended to occupy the field of locomotive equipment to the exclusion of state authority when it enacted the BIA. The *Napier* Court held that the intention was to occupy the field, preempting state law claims. *Napier,* 272 U.S. at 613, 47 S.Ct. at 210.

In *Marshall,* 720 F.2d 1149, the Ninth Circuit considered a claim identical to that of Springston: whether the railroad could be liable for a grade crossing collision under a claim alleging common-law negligence for failing to install different headlights on a locomotive. The *Marshall* court held that the common law was preempted under the BIA, stating:

> [W]e hold that under the [BIA] the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority of the [Secretary]' to prescribe the same part or attachment. It is within the scope of the Secretary's authority to prescribe strobe or oscillating lights for locomotives, and any state regulation is therefore preempted.

*Id.* at 1152 (quoting *Napier,* 272 U.S. at 611, 47 S.Ct. at 209). *See also Eldridge v. Missouri P.R.R.*, 832 F.Supp. 328 (E.D.Okla. 1993) (granting partial summary judgment on plaintiff's claim that the locomotive involved in the crossing collision was equipped with inadequate warnings, holding that the claim was preempted under the BIA).

■ Contrary to plaintiff's argument, the preemptive effect of the BIA on state regulation of locomotive equipment was not affected or modified by the Federal Railroad Safety Act ("FRSA") which was enacted in 1970. The *Marshall* court addressed this issue, holding that the FRSA "does not subsume, replace, or recodify any acts. The logical inference from this structure is that Congress intended to leave unchanged the force and effect of existing federal regulatory statutes." *Id.* at 1153. The *Marshall* court noted that the objective of the FRSA, to achieve national uniformity of railroad regulation, 49 U.S.C. § 20106, would be under-

mined if the FRSA were read to repeal preemption under the BIA. *Id.*

Federal law preempts plaintiff's claims based upon the need for extra-statutory warning devices on the train. The district court was correct in granting summary judgment for defendants on this issue.

## B. PUNITIVE DAMAGES

■ The district court granted Conrail's motion for summary judgment on the issue of punitive damages. The court's granting of summary judgment is reviewed *de novo. Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir.1995).

■ In Ohio, punitive damages are available in civil tort actions upon a finding of actual malice. *Edmondson v. Steelman,* 87 Ohio App.3d 455, 622 N.E.2d 661, 663 (1992). The Ohio Supreme Court in *Preston v. Murty,* 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), held that actual malice may be demonstrated by showing (1) that state of mind under which a person's conduct is characterized by hatred, ill-will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. The Court in *Preston* discussed the policy behind punitive damages as follows:

> The policy for awarding punitive damages in Ohio ' * * * has been recognized * * * as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct.' Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior.

*Id.* 512 N.E.2d at 1176 (citation omitted). When considering punitive damages, "misconduct greater than mere negligence is required." *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 575 N.E.2d 416, 419 (1991).

> The concept requires a finding that the probability of harm occurring is great and

that the harm will be substantial. A possibility or even probability will not be enough as that requirement would place the act in the realm of negligence. A requirement of substantial harm would also better reflect the element of outrage required to find actual malice.

*Preston,* 512 N.E.2d at 1176.

Nothing in the record supports plaintiff's argument that the issue of punitive damages should have gone to the jury. The district court was correct in granting summary judgment for the defendants on this ground.

## C. JURY INSTRUCTION REGARDING THE DUTY OF CARE

 Plaintiff argues that the district court gave the wrong instruction regarding the duty of care owed to plaintiff by the defendant railroad. Plaintiff's argument involves interpretation of Ohio law, specifically the standard of care as articulated in *Matkovich v. Penn Central Transp. Co.,* 69 Ohio St.2d 210, 431 N.E.2d 652 (1982) and in *Hood v. New York, C. & St. L.R.R.,* 166 Ohio St. 529, 144 N.E.2d 104 (1957). We need not address plaintiff's argument regarding the correct jury instruction because this issue was mooted by the outcome of the case, as evidenced by the jury's response to the interrogatory addressing the negligence of Conrail. *Shepherd v. Puzankas,* 355 F.2d 863, 865 (6th Cir.1966) (argument of error as to jury instruction mooted by ultimate response of jury). Interrogatory number two asked "[o]f what did the negligence of Consolidated Rail Corporation consist?" The jury responded: "Absence of active warning systems based on traffic flow for St Rt 281 crossing." This response makes it evident that the jury focused on the actions of the railroad and found the railroad negligent in failing to provide extra-statutory warnings at the intersection. The plaintiff, having prevailed on this issue, can show no prejudice resulting from the jury instruction.[1]

---

1. In any event, we note that this court has recently held that *Hood* and *Matkovich* are not in conflict, but rather that where the crossing is "extra-hazardous," the railroad's duty to use or-

## D. CLAIMS OF EVIDENTIARY ERROR

 The remaining alleged errors, those of both plaintiff and defendant, involve evidentiary matters. "A district court's evidentiary determinations are subject to an abuse of discretion standard of review." *Hancock v. Dodson,* 958 F.2d 1367, 1371 (6th Cir. 1992). Having thoroughly reviewed the record and having heard oral argument, we now hold that the district court did not abuse its discretion as to any of the evidentiary rulings now claimed as error. The district court is affirmed as to all remaining issues on appeal.

The orders of the district court are **AFFIRMED.**

dinary care to protect the safety of motorists may require the installation of extra-statutory warning devices. *Hostetler v. Consolidated Rail Corp.,* 123 F.3d 387 (6th Cir.1997).